UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

OLEN J. LEE and MELISSA A. LEE, individually, and as
parents and next of kin of J.J.L., a minor child; and
BRITTANY DAWN LEE,

     Plaintiffs,

vs.

Case No. 4:15-cv-525-TCK-FHM

BP p.l.c., *et al.*

     Defendants.

---

**PLAINTIFFS' RESPONSE AND OBJECTION TO DEFENDANTS BP P.L.C.,
MARATHON OIL CORPORATION, MARATHON PETROLEUM CORPORATION,
AND KINDER MORGAN, INC.'S PARTIAL MOTIONS TO DISMISS**

---

Micheal L. Darrah, OBA #2162
E. Edd Pritchett, Jr., OBA #16118
Lane R. Neal, OBA #22246
Durbin, Larimore & Bialick
920 North Harvey
Oklahoma City, OK 73102-2610
Telephone: (405) 235-9584
Facsimile: (405) 235-0551
dlb@dlb.net
     - and -
Allan DeVore, OBA #2328
Jandra Jorgenson, OBA #16610
DeVore & Jorgenson, PLC
5709 N.W. 132nd Street
Oklahoma City, OK 73142
Telephone: (405) 603-8585
Facsimile: (877) 636-8113
d-j@devorejorgenson.com
     - and -
Michael J. Blaschke, OBA #868
Michael J. Blaschke, P.C.
3037 N.W. 63rd, Suite 205
Oklahoma City, OK 73116
Telephone: (405) 562-7771
Facsimile: (405) 285-9350
mblaschke@thelawgroupokc.com
Attorneys for Plaintiffs

December 12, 2016

## TABLE OF CONTENTS

Page

BACKGROUND ...........................................................................................................1

NOTICE PLEADING STANDARD ............................................................................2

ARGUMENTS AND AUTHORITIES.........................................................................4

### PROPOSITION I

THE OPERATIONAL DEFENDANTS HAVE MISSTATED THE LAW OF NEGLIGENCE *PER SE* IN THEIR BRIEFS. UNDER THE CORRECT FRAMEWORK OF NEGLIGENCE *PER SE* IN OKLAHOMA, PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 8 AND SHOULD NOT BE DISMISSED. ...................................................4

### PROPOSITION II

THE STRICT LIABILITY CLAIM IN PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 8 AND SHOULD NOT BE DISMISSED. ..................................................................................10

### PROPOSITION III

THE FRAUD CLAIM IN PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 8 AND SHOULD NOT BE DISMISSED. ..................................................................................................13

### PROPOSITION IV

PLAINTIFFS' AMENDED COMPLAINT SUFFICIENTLY PLEADS DAMAGES FOR PERSONAL HARM AND ANNOYANCE. .....................................16

## TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 3, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 3, 4

*Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326 ......... 4, 5, 6, 7

*Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273 (N.D. Ill. 1996) .......................... 14

*Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366 (D. Del. 2009) ........................... 15

*Davis v. City of Tulsa*, 2004 OK CIV APP 28, ¶ 13, 87 P.3d 1106................................. 10

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 2303 (S.D.N.Y. 2006) ........................... 14

*Estate of Migilaccio v. Midland Nat'l Life Ins. Co.*,
436 F.Supp.2d 1095 (C.D. Cal. 2006) .............................................................. 14

*Howard v. Zimmer*, 2013 OK 17, 299 P.3d 463 ........................................................ 6, 7

*Huntair, Inc. v. Gladstone*, 774 F.Supp.2d 1035 (N.D. Cal. 2011) ............................ 13, 14

*In re Catfish Antitrust Litigation*, 826 F.Supp. 1019 (N.D. Miss. 1993)......................... 15

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................................ 14

*Nevada ex. rel. Stenke v. Merk & Co., Inc.*, 432 F.Supp.2d 1082 ................................... 14

*Romero v. Securus Technologies, Inc.*, 2016 WL 6157953 (S.D. Cal. 2016) .................. 13

*Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir. 1981) ................................ 11, 12

*State of Cal. ex. rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631 (N.D. Cal. 1997)........ 14

*U.S. ex re. Ellis v. Sheikh*, 583 F.Supp.2d 434, 439 (W.D.N.Y. 2008) ........................... 15

*U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*,
255 F.Supp.2d 351 (E.D. Pa. 2002) .............................................................. 14

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
117 F.Supp.3d 1092, 1107 (C.D. Cal. 2015) .................................................... 13

*United States of America ex rel. Paul P. McDermott v. Genentech, Inc.*,
2006 WL 3741920 at \*12 ...................................................................................... 15

*Wetsel v. Indep. Sch. Dist. I-1*, 1983 OK 85, ¶ 7, 670 P.2d 986 ...................................... 10

*Young v. Darter*, 1961 OK 142, 363 P.2d 829.................................................................. 12

## Statutes

15 Okla. Stat. §58............................................................................................................... 15
15 Okla. Stat. §59............................................................................................................... 15
27A O.S. §2-5-102 ............................................................................................................... 7
27A O.S. §2-6-102 ............................................................................................................... 8
27A O.S. §2-6-105 ............................................................................................................... 7
33 U.S.C.A. §1252 ............................................................................................................... 8
42 U.S.C.A. § 9607 .............................................................................................................. 9
Fed.R.Civ.P. 12(b)(5)........................................................................................................... 1
Fed.R.Civ.P. 12(b)(6)........................................................................................................... 1
Fed.R.Civ.P. 8 ...................................................................................................................... 2
Fed.R.Civ.P. 9(b) .................................................................................... 13, 14, 15, 16
Rule 12(b)(6)......................................................................................................................... 3

COME NOW the Plaintiffs, Olen J. Lee and Melissa A. Lee, individually, and as parents and next of kin of J.J.L., a minor child; and Brittany Dawn Lee, and respectfully request that this Court deny Defendants BP p.l.c.'s, Marathon Oil Corporation's, Marathon Petroleum Corporation's, and Kinder Morgan, Inc.'s (herein collectively referred to as "Operational Defendants" unless individually referenced), Partial Motions to Dismiss [Doc. 84, 86,87,88], as Plaintiffs have successfully stated valid legal claims in their Amended Complaint that meet the notice pleading requirements of Federal Rule of Civil Procedure 8 and 9(b).[1] In support hereof, Plaintiffs submit the following brief.

## BACKGROUND

On October 5, 2015, BP filed its *first* Motion to Dismiss [Doc. 26] on the basis that (1) Plaintiffs failed to comply with the service of process requirements of Fed.R.Civ.P. 12(b)(5), and (2) Plaintiffs' original Petition failed to state a claim upon which relief could be granted pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, BP argued that Plaintiffs failed to state a negligence *per se* claim because they did not cite a specific statute or regulation that the Operational Defendants violated. BP further argued that Plaintiffs failed to state a claim for strict liability because measures existed to prevent the kind of harm that occurred in this case (pollution and contamination) that render strict liability inapplicable. BP also argued that Plaintiffs failed to state a claim for fraud because they purportedly did not comply with the heightened pleading standard for a fraud cause of action.

This Court issued an Order and Opinion on September 28, 2016 [Doc. 70], partially granting BP's motion and dismissing Plaintiffs' negligence *per se*, strict liability, and fraud claims for allegedly failing to state a claim pursuant to 12(b)(6). The Court's Order provided that, in the

---

[1] This Response and Objection, with Supporting Brief, serves as Plaintiffs' response to all of the Partial Motions to Dismiss that have been filed by BP, Marathon and Kinder Morgan [Doc.84, 86,87,88], as each of those Motions asserts identical arguments.

interest of justice, and because courts strongly disfavor dismissing claims for pleading deficiencies before the commencement of discovery, Plaintiffs could file an Amended Complaint addressing any alleged insufficiencies in the original Petition. The Court denied the portion of BP's motion regarding insufficiency of process, as it found that Plaintiffs sufficiently complied with the service of process requirements, which provided BP with adequate notice of the claims against it.

Plaintiffs filed an Amended Complaint on October 12, 2016 [Doc. 72]. Although Plaintiffs' 22-page Amended Complaint remedied any insufficiencies the Court saw in the original Petition, BP has now filed a *second* Motion to Dismiss [Doc. 84], regurgitating the same arguments made in its first Motion to Dismiss. The other Operational Defendants have filed identical motions adopting BP's arguments. BP also filed a Motion to Reconsider the Court's denial of the 12(b)(5) portion of its first Motion to Dismiss, reflecting a pattern of obstructionism, delay and challenge of the Court's prior orders. The Operational Defendants' Partial Motions to Dismiss should be denied altogether, as Plaintiffs have stated claims in their Amended Complaint for negligence *per se*, strict liability and fraud that all meet the notice pleading requirements of Fed.R.Civ.P. 8 and 9(b).

## NOTICE PLEADING STANDARD

The Federal Pleading Code requires notice pleading. Fed.R.Civ.P. 8 provides:

A pleading that states a claim for relief must contain:

(1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and,

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

The United States Supreme Court interpreted the requirement that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, the Court discussed the standard for a 12(b)(6) motion:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.,* a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.
>
> .... The 'no set of facts' language has been questioned, criticized, and explained away long enough by courts and commentators, and is best forgotten as an incomplete, negative gloss on an accepted pleading standard: **once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint**.
>
> .... Here, **the Court is not requiring heightened fact pleading of specifics**, **but only enough facts to state a claim to relief that is plausible on its face**. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.

*Twombly*, 1959-60 (emphasis added).

The *Iqbal* court reinforced this standard that a complaint state "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663.

> A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at556, 127 S.Ct. 1955. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id*., at 55, 127 S.Ct. 1955. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id*., at 556, 127 S.Ct. 1955.... When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 663-64.

3

*Twombly* and *Iqbal* stand for the premise that a complaint need only allege sufficient facts to state a **plausible** claim. While these cases certainly do reject the validity of "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," Plaintiffs' 22-page Amended Complaint is not a threadbare recitation of their claims. Neither *Twombly* nor *Iqbal* stands for the proposition that a plaintiff must spoon-feed a defendant with evidentiary facts to prove each element of each cause of action stated, which is the standard that the Operational Defendants advocate in their motions.

## ARGUMENTS AND AUTHORITIES

### PROPOSITION I

**THE OPERATIONAL DEFENDANTS HAVE MISSTATED THE LAW OF NEGLIGENCE *PER SE* IN THEIR BRIEFS. UNDER THE CORRECT FRAMEWORK OF NEGLIGENCE *PER SE* IN OKLAHOMA, PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 8 AND SHOULD NOT BE DISMISSED.**

The Operational Defendants' arguments are based upon an incorrect statement of negligence *per se*. They argue that a claim for negligence *per se* does not exist unless the underlying statute contains an independent private right of action and standard of care apart from that already contained within the negligence portion of a negligence *per se* cause of action. This argument reveals a complete misunderstanding of negligence *per se* under extant Oklahoma law.

**There is no requirement under Oklahoma negligence *per se* law that the underlying statute upon which the cause of action is based contain an independent private right of action or specific standard of care language.** In *Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326, the Oklahoma Supreme Court discussed negligence *per se* at length. The plaintiff in *Busby* was a minor, injured when she was served alcohol by the defendant and fell off of a balcony on the defendant's premises. The plaintiff alleged that: (i) she was negligently served

4

beer, (ii) she sustained injuries as a result, and (iii) the defendant was negligent *per se* because it violated local ordinances and state law that prohibited serving alcohol to a minor. The defendant argued that the local ordinances and state laws prohibiting a commercial vendor from serving alcohol to a minor were punitive in nature and failed to provide an independent right of action. Just as the Operational Defendants have done in the present case, the defendant in *Busby* argued that the local ordinances and state laws did not provide duties that extended to minors who were injured from voluntarily consuming alcohol. The Oklahoma Supreme Court disagreed. The Court described the doctrine of negligence *per se* under Oklahoma law as follows:

> Courts may recognize a cause of action where they conclude that a defendant owes a duty of care to the plaintiff. In such cases, the standard of conduct is that of a reasonably prudent person under the same or similar circumstances. If, however, there are criminal or regulatory statutes which delineate the defendant's conduct, courts may adopt the conduct required by the statutes as that which would be expected of a reasonably prudent person - providing courts believe the statutorily required conduct is appropriate for establishing civil liability. When courts adopt the statutory standard for a cause of action for negligence, the violation of the statute is said to be negligence *per se*. The violation of a statute constitutes negligence *per se* if the other elements of negligence are present. To establish negligence *per se* on the basis of a statutory violation the party must establish that: 1) the injury was caused by the violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute.

*Id.* at 1329.

Notably, the Court did not state that the statute used to establish negligence *per se* must provide an independent right of action based upon the conduct proscribed by the statute. The Court held that, even though the local ordinances and state laws did not provide their own independent rights of action for injuries to a minor resulting from that minor voluntarily consuming alcohol, the defendant's prohibited conduct, in violation of the underlying statute, creates a rebuttal presumption of negligence (*i.e.,* negligence *per se*) and shifts the burden of proof to the defendant to show he was not negligent:

5

Analysis of the majority of cases which allow a cause of action against a commercial vendor who sells beer or alcohol to a minor when the minor is injured after drinking the beer, reveals that these cases recognize that statutes prohibiting the sale of beer to minors and prohibiting minors from purchasing or possessing beer seek to protect the minor as well as innocent third parties. Accordingly, we find that minors are within the class of persons that 37 O.S.1991 § 241 is intended to protect and that injury to a minor as the result of drinking beer is exactly what was intended to be prevented by the statute. Violation of this statute constitutes negligence *per se*.

*Id.* at 1332.

This holding shows that engaging in prohibited conduct – *i.e.,* the sale of beer to a minor – is negligence *per se* and creates the rebuttable presumption that the seller is liable to the minor and any third parties for harm caused by the consumption of alcohol by minors (which is not the proscribed conduct in that statute). Likewise, Operational Defendants' pollution of the land and water (and the maintenance, spread, and lack of remediation of the pollution) is conduct prohibited by Oklahoma statutes and creates a rebuttable presumption that the Operational Defendants were negligent and are liable for the harm caused to Plaintiffs and others affected by the pollution.

In *Howard v. Zimmer*, 2013 OK 17, 299 P.3d 463, the Oklahoma Supreme Court held that a federal regulation's requirement that all violations be prosecuted in the name of the United States Government, did not prohibit Oklahoma law from recognizing a plaintiff's parallel negligence *per se* action based upon that regulation. The *Howard* defendant argued that a federal regulation could not form the basis of a negligence *per se* claim in Oklahoma state court. The Oklahoma Supreme Court disagreed, stating:

The negligence per se doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties. When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence per se. To establish negligence per se, the plaintiff must demonstrate the claimed injury was caused by the violation, and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute. Liability per se enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that

6

> only causation and damages need be proven. The question of whether a causal connection exists between the violation of the regulation here and Sulzer's actions and whether those violations were negligence per se, is for the trier of fact.
>
> …. We have long recognized that validly promulgated and executed regulations have the full force and effect of law as do administrative rules which are binding expressions of lawmaking powers. These rules and regulations, enacted by administrative agencies and boards pursuant to the powers delegated to them, **are highly material and relevant to the issue of the applicable standard of care and its alleged breach.**

*Id.* at ¶ 13, 467–68. (Emphasis in original).

The arguments presented by the Operational Defendants are in complete contravention of the Oklahoma Supreme Court's holdings in *Busby* and *Howard*. These cases make it clear that there is no requirement that a statute or regulation provide a plaintiff with an independent cause of action in order for that statute or regulation to form the basis of a negligence *per se* claim. The only qualifiers for a negligence *per se* claim are that (1) the injury was caused by the violation of conduct proscribed in the statute or regulation, (2) the injury was of the type intended to be prevented by the statute or regulation, and (3) the plaintiff was part of the class intended to be protected by the statute or regulation. These three requirements do not mean that the plaintiff must have an independent right of action under the statute or regulation.

In the present case, Plaintiffs assert negligence *per se* claims based upon statutes and regulations that are intended to protect the public from the dangers of pollution and contamination of the kind at issue here. The Oklahoma Environmental Quality Code, specifically 27A O.S. §2-6-105, prohibits any person from polluting the waters of the state. Likewise, the Oklahoma Clean Air Act states that its purpose is "to provide the means to achieve and maintain atmospheric purity necessary for the protection and enjoyment of human, plant or animal life and property in this state." 27A O.S. §2-5-102. The Oklahoma Water Quality Act similarly declares a policy that "the pollution of the waters of this state constitutes a menace to public health and welfare, creates

public nuisances… it is hereby declared to be the public policy of this state to conserve the waters of the state and to protect, maintain and improve the quality thereof… **to provide that no waste or pollutant be discharged into any waters of the state**.” 27A O.S. §2-6-102. (Emphasis added). These statutes reflect the overall regulatory scheme and policy that the safety and health of the people, animals and wildlife of Oklahoma be protected from pollutants and contaminants in the water, air and on the land.

As for the federal statutes, the Clean Water Act purports to “prepare or develop comprehensive programs for preventing, reducing, or eliminating the pollution of the navigable waters and ground waters and improving the sanitary condition of surface and underground waters.” 33 U.S.C.A. §1252. The Comprehensive Environmental Response, Compensation, and Liability Act (“CERCLA”) provides that:

**(1)** **the owner and operator of** a vessel or **a facility**,

**(2)** any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

**(3)** any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

**(4)** any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

   **(A)** all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

**(B)**    any other necessary costs of response incurred by any other person consistent with the national contingency plan;

**(C)**    damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

**(D)**    the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C.A. § 9607.

CERCLA imposes a duty upon any owner or operator of a facility that has improperly released toxic pollutants or contaminants into the environment to clean up and remediate the damage. One of Plaintiffs' allegations is that the Operational Defendants had a duty to comply with CERCLA but did not do so.

These statutes are all specifically cited by Plaintiffs in the Amended Complaint.[2] While some of these statutes and regulations may not provide Plaintiffs with a direct cause of action independent of negligence *per se*, they are part of a regulatory scheme intended to protect humans and their property from the health and safety hazards of pollution and contamination by toxic substances. The harms that the statutes were designed to prevent are the same harms alleged in the Amended Complaint, and Plaintiffs are among those persons the statutes were designed to protect. The Operational Defendants' violation of these statutes and regulations creates a rebuttable presumption of negligence.

---

[2] The Operational Defendants argue in their motions that Plaintiffs have given a "laundry list" of statutes without any factual support. Not only have Plaintiffs cited specific sections of specific acts in Paragraph 19 of the Amended Complaint, as well as facts to support the violations of these statutes in Paragraphs 1-18, that "laundry list" is precisely what the Court asked for – and, indeed, the cited statutes prohibit the filth that the Operational Defendants created, maintained, failed to clean and allowed to harm Plaintiffs and others. It is time for the Operational Defendants to clean up their dirty laundry and pay for the damage they caused.

The Operational Defendants' argument that the cited statutes and regulations cannot apply because the conduct complained of occurred prior to their enactment is premised upon a misstatement of the facts and circumstances surrounding Plaintiffs' allegations. The Operational Defendants mistakenly assert that the conduct complained of, *i.e.*, the pollution and contamination of Plaintiffs' land, occurred during a fixed period of time in the early twentieth century. While it is true that the contamination and pollution *started* at that time, the harm and damage to Plaintiffs' property has been *ongoing and continuous* and continues today. The fact that Plaintiffs' property has been designated a SuperFund site and the government has deemed it *currently* too hazardous for human habitation demonstrates that reality. This continuing and ongoing nuisance is not a one-time harm or event and does not create a temporal limitation under the statutes.

## PROPOSITION II

**THE STRICT LIABILITY CLAIM IN PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 8 AND SHOULD NOT BE DISMISSED.**

Under Oklahoma law, a party conducting an ultrahazardous activity is liable for damages regardless of fault. *Davis v. City of Tulsa*, 2004 OK CIV APP 28, ¶ 13, 87 P.3d 1106 (citing *Wetsel v. Indep. Sch. Dist. I-1*, 1983 OK 85, ¶ 7, 670 P.2d 986, 990). The Restatement (Second) of Torts (1977), § 519- General Principle states as follows:

(1)    One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2)    This strict liability is limited to the kind of harm, the possibility of which makes the activities abnormally dangerous.

The issue of whether oil and gas refinery operations and the associated storage and movement of chemicals and substances, may constitute ultrahazardous activities has never been addressed by any Oklahoma court.

Plaintiffs re-asserted their strict liability claims against the Operational Defendants in the Amended Complaint and clarified that it is the *operation of the refineries and their associated facilities, itself*, with the use of toxic chemicals and substances that accompany refining activities, that constituted the ultrahazardous activity, as it is nearly impossible to operate these types of facilities and store the chemicals and substances without some leakage of the kind at issue here. Plaintiffs stated as follows in the Amended Complaint:

> The substances on the properties are highly dangerous substances, many of which are known carcinogens or cause heavy-metal (lead) toxicity to humans and animals. The substances also have a high risk of harming the water, soils and the structures and other personal property on the land. The likelihood that harm would result from the Operational Defendants' activities was great, and that harm did, in fact, occur and created the nation's latest Superfund site. The exercise of reasonable care in the **operation of the facilities** may reduce, but cannot eliminate the risk of harm.

[Doc. 72, ¶ 23]. Plaintiffs included a cite to a study conducted by the American Petroleum Institute regarding the high risk of releases at the nation's various refineries, even in highly-controlled environments, where governmental oversight and modern leak prevention requirements are routinely employed.

Courts have found that the storage and leakage/release of toxic chemicals and substances constitutes ultrahazardous activity. In *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir. 1981), the Tenth Circuit held that strict liability applied to the escape of plutonium from a nuclear energy plant, where the plaintiff had suffered radiation damage from plutonium exposure. The plutonium leaked from a nearby nuclear plant (where the plaintiff worked) and contaminated her apartment, which ultimately had to be destroyed because it posed such a threat to her health. The plaintiff died shortly thereafter from an unrelated accident, and her husband brought suit for the damage she suffered, including the damage to her personal property in the apartment. One of

11

Silkwood's claims was based upon strict liability in that the discharge of radioactive fluids was ultrahazardous. The Tenth Circuit stated:

> We have no doubt Oklahoma courts would apply strict liability to this case of escape of plutonium, a highly toxic and dangerous substance. *Young v. Darter*, 363 P.2d 829 (Okl.1961) (herbicide spray). *See also Kirkland v. General Motors Corp.*, 521 P.2d 1353 (Okl.1974). Nuclear energy is surely an area "in which no court will, at last, refuse to recognize and apply the principle of strict liability." W. Prosser, The Law of Torts, s 78, at 516 (4th ed. 1971); see Restatement (Second) of Torts s 520, comment (g) (1977) ("Some activities, such as the use of atomic energy, necessarily and inevitably involve major risks of harm to others, no matter how or where they are carried on.").
>
> We have no trouble with proximate cause in the context of damage to personal property in Silkwood's apartment. It was stipulated that the plutonium came from the Kerr-McGee plant; clearly the property damage was the result of plutonium contamination. Regarding one who carries on an abnormally dangerous activity, Restatement (Second) of Torts s 519, comment (e) (1977) states that strict liability applies to "harm that is within the scope of the abnormal risk that is the basis of the liability." The key is foreseeability. It is surely foreseeable and within the scope of the abnormal risk that radiation contamination will occur from contact with plutonium that escapes a nuclear fuel plant. Just as the risk incident to dynamite is accidental explosion, a risk incident to plutonium is accidental contamination. The jury's finding that Silkwood did not intentionally carry the plutonium from the plant to her apartment eliminated the only possible intervening cause for which any evidence was presented.

In *Young v. Darter*, 1961 OK 142, 363 P.2d 829, cited by the Tenth Circuit in *Silkwood*, the Oklahoma Supreme Court held that a landowner was strictly liable for using pesticides in a manner that caused them to spread to an adjacent landowner's land and cause damage to cotton crops. The Court stated:

> The use, by the defendant, of a poison on his land, which, if it escaped, would cause damage to plaintiff, was done at defendant's peril. He is responsible for its drifting and thereby trespassing on plaintiff's land where it damaged the cotton. Any precautions defendant's agent may have taken to prevent the injuries to plaintiff's cotton, in view of the results, do not serve to extinguish his liability. The question in general is not whether defendant acted with due care and caution, but whether his acts occasioned the damage.

*Id*. at 833-34.

In the present case, the Plaintiffs' property was designated as a SuperFund site, and the Government recommended Plaintiffs and all affected persons to permanently vacate the area because of the poisonous materials released and left on Plaintiffs' land by the Operational Defendants. Plaintiffs have stated a plausible claim for relief based upon strict liability, in that the operation of oil and gas refineries and associated storage and movement of feedstock and other chemicals, led to some unpreventable release of toxic pollutants and constituted an ultrahazardous activity, where the risk of harm can be reduced with precautions but cannot be completely eliminated.

## PROPOSITION III

### THE FRAUD CLAIM IN PLAINTIFFS' AMENDED COMPLAINT MEETS THE NOTICE PLEADING STANDARD OF FED.R.CIV.P. 9(b) AND SHOULD NOT BE DISMISSED.

The Operational Defendants assert in their briefs that Plaintiffs failed to meet the heightened specificity requirements for fraud set forth in Fed.R.Civ.P. 9(b), which generally requires that an allegation of fraud contained in a Complaint "must state with particularity the circumstances constituting fraud or mistake." Yet, federal courts have held that "'where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated.'" *Romero v. Securus Technologies, Inc.*, 2016 WL 6157953 (S.D. Cal. 2016) (quoting *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1107 (C.D. Cal. 2015)). This is so because specific occurrences of omissions, by their very nature, do not "occur," which is why they are called omissions.

In *Huntair, Inc. v. Gladstone*, 774 F.Supp.2d 1035 (N.D. Cal. 2011), the plaintiff brought claims against a former employee for involvement in a scheme to steer business away from the company during his employment. One of the allegations was that the former employee failed to disclose the scheme to Huntair and participated in efforts to keep the information from the

13

company. The former employee filed a motion to dismiss these allegations for failure to meet the heightened pleading requirements of Rule 9(b). The Court rejected the defendant's argument and held because Huntair's fraud claim was based upon an omission or knowing failure to say something when he should have, "it would be **impossible** for Plaintiffs to 'allege that Moser made a false statement, what that statement was, to whom it was made and when it was made.'" *Id*. at 1045 (emphasis added). The Court further stated that Huntair's description and overall statement of the scheme, in general, was sufficient to meet the notice requirement for a fraud claim based upon something that a person failed to say, which by its nature does not contain an affirmative statement that can be identified.

In the same vein, federal courts have relaxed the heightened pleading requirement of Rule 9(b) when the facts and evidence that would prove or support the fraud allegation is in the control of a defendant. In *Estate of Migilaccio v. Midland Nat'l Life Ins. Co.*, 436 F.Supp.2d 1095 (C.D. Cal. 2006), the Court stated, "Rule 9(b)'s particularity requirement is relaxed in instances of corporate fraud where the facts supporting the allegation of fraud are exclusively within the defendants' possession." *Id*. at 1106 (citing *State of Cal. ex. rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 635 (N.D. Cal. 1997)). "The pleading requirement is also relaxed "with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts .... Rule 9(b) is therefore satisfied if the complaint provides notice of the alleged misrepresentations." *Nevada ex. rel. Stenke v. Merk & Co., Inc.*, 432 F.Supp.2d 1082 (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). *See also Dover Ltd. v. A.B. Watley, Inc.*, 423 F.Supp.2d 2303 (S.D.N.Y. 2006); *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 255 F.Supp.2d 351 (E.D. Pa. 2002); *Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273 (N.D. Ill. 1996); *In re Catfish Antitrust Litigation*, 826 F.Supp. 1019

(N.D. Miss. 1993); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366 (D. Del. 2009). "Courts have also relaxed the specificity requirement of Rule 9(b) when the fraud being alleged is part of a complex scheme occurring over a long period of time. A 'relaxed rule of pleading' may be allowed as an exception in ... cases ... where the 'alleged conduct took place over a long period of time or involved numerous occurrences.'" *U.S. ex re. Ellis v. Sheikh*, 583 F.Supp.2d 434, 439 (W.D.N.Y. 2008) (quoting *United States of America ex rel. Paul P. McDermott v. Genentech, Inc.*, 2006 WL 3741920 at *12).

All three of the above-described factors exist in the present case to relax the Rule 9(b) specificity requirement. The bulk of Plaintiffs' fraud allegations are based upon the Operational Defendants' failure to give Plaintiffs, or any other prior landowner, notice of the pollution and contamination on the land. Plaintiffs have stated in paragraph 25 of the Amended Complaint:

> The Operational Defendants intentionally withheld vital information, failed to fully and adequately disclose the existence, extent, danger, risk and pervasiveness of the pollution and contamination of the property, covered up and concealed the pollution and contamination and their knowledge of the dangerous conditions, and conveyed the property to the Church's predecessors without full disclosure, knowing the polluted, contaminated and dangerous condition of the property and actively concealing that information, reasonably expecting that their purchasers, future purchasers and other persons would rely upon the deception and fraud of the Operational Defendants and be damaged in that reliance. By concealing and failing to disclose the true information about the condition of the property and about the pollution which existed thereunder, the Operational Defendants committed actual fraud under 15 Okla. Stat. §58 through "the suppression of that which is true by one having knowledge or belief of the fact" and "other act[s] fitted to deceive." By intentionally breaching their duty to fully disclose, the Operational Defendants committed constructive fraud under 15 Okla. Stat. §59 through "gain[ing] an advance to the person in fault, or any one claiming under him, by misleading another to his prejudice or to the prejudice of any one claiming under him."

Plaintiffs have identified and described the fact that the Operational Defendants intentionally withheld information and the circumstances surrounding their omissions. An omission cannot be affirmatively identified because, by its nature, it is something that should have

15

happened but did not. Additionally, most of the facts, documents and evidence that support these allegations are in the control of the Operational Defendants, including memoranda, notes, e-mails, letters and other records and communications. Finally, much of the conduct described in the fraud complaint occurred over an extended period of years and throughout various transactions, mergers and acquisitions of the various entities involved, as described in detail in paragraph 26. Plaintiffs' Amended Complaint contains four pages of conduct to support the fraud claim, and those allegations are sufficient under Rule 9(b), particularly because the majority of the allegations describe omissions, much of the documentation and other evidence to support the claims is within the control of the corporate entities involved, and the conduct complained of has occurred over many years.

## PROPOSITION IV

**PLAINTIFFS' AMENDED COMPLAINT SUFFICIENTLY PLEADS DAMAGES FOR PERSONAL HARM AND ANNOYANCE.**

The Operational Defendants argue that Plaintiffs have failed to allege facts to support their claims for damages involving personal harm, personal annoyance and inconvenience and endangerment of comfort, health, tranquility and safety. **Plaintiffs' property has been designated a SuperFund site, and Governmental officials advised Plaintiffs that their property was no longer safe for human use and habitation.** It is difficult to imagine what facts the Operational Defendants would insist be set forth in a complaint to notify them of the fact Plaintiffs have sustained harm, if the fact that they lived and worked on a SuperFund site falls short.

## CONCLUSION

Plaintiffs state plausible claims for negligence per se, strict liability and fraud in their Amended Complaint. These facts and allegations contained within the Amended Complaint meet the notice pleading requirements of Fed.R.Civ.P. 8 and 9(b). As such, Plaintiffs respectfully

16

request that the Court deny all of the motions to dismiss filed by the Operational Defendants, along

with any and all relief deemed just and necessary.

*s/Micheal L. Darrah*
Micheal L. Darrah, OBA #2162
E. Edd Pritchett, Jr., OBA #16118
Lane R. Neal, OBA #22246
920 North Harvey
Oklahoma City, OK 73102-2610
Telephone: (405) 235-9584
Facsimile: (405) 235-0551
dlb@dlb.net
      - and -
Allan DeVore, OBA #2328
Jandra Jorgenson, OBA #16610
DeVore & Jorgenson, PLC
5709 N.W. 132nd Street
Oklahoma City, OK 73142
Telephone: (405) 603-8585
Facsimile: (877) 636-8113
d-j@devorejorgenson.com
      - and -
Michael J. Blaschke, OBA #868
Michael J. Blaschke, P.C.
3037 N.W. 63rd, Suite 205
Oklahoma City, OK 73116
Telephone: (405) 562-7771
Facsimile: (405) 285-9350
mblaschke@thelawgroupokc.com
Attorneys for Plaintiffs

2

## CERTIFICATE OF SERVICE

⊠I hereby certify that on December 12, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

A. Scott McDaniel, OBA #16460
Stacy L. Acord, OBA #18633
Melissa A. East, OBA #21695
Rhiannon K. Baker, OBA #21695
McDaniel Acord, PLLC
9343 E. 95th Ct.
Tulsa, OK 74133
Telephone: (918) 382-9200
Facsimile: (918) 382-9282
smcdaniel@ok-counsel.com
sacord@ok-counsel.com
meast@ok-counsel.com
rbaker@ok-counsel.com
Attorneys for Defendant, BP, p.l.c.

Kenneth H. Blakley, OBA #1227
McAfee & Taft
Tenth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
ken.blakley@mcafeetaft.com
Attorney for Defendants, Marathon Oil Corporation and Marathon Petroleum Corporation

Larry D. Ottaway, OBA #6816
Amy Sherry Fischer, OBA #16651
Jordyn L. Cartmell
Foliart, Huff, Ottaway & Bottom
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, OK 73102
Telephone: (405) 232-4633
Facsimile: (405) 232-3462
larryottaway@oklahomacounsel.com
amyfischer@oklahomacounsel.com
jordyncartmell@oklahomacounsel.com
          - and -
Bonnie A. Barnett, PA:37004, NJ: 002711996
P. Leigh Bausinger, PA: 306471,
NJ: 017112009
Drinker Biddle & Reath, LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2916
Telephone: (215) 988-2725
Facsimile: (215) 988-2757
bonnie.barnett@dbr.com
leigh.bausinger@dbr.com
          - and -
Ross A. Lewin, NJ Bar #019101983
Drinker Biddle & Reath, LLP
105 College Road East, Suite 300
Princeton, NJ 08540
Telephone: (609) 716-6500
Facsimile: (609) 799-7000
ross.lewin@dbr.com
Attorneys for Defendant, Kinder Morgan, Inc.

*s/Micheal L. Darrah*
Micheal L. Darrah

9997.0170\17384408_1