**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1) OLEN J. LEE and | ) | |
| 2) MELISSA A. LEE, individually, and as parents | ) | |
| and next of kin of J.J.L., a minor child; and | ) | |
| 3) BRITTANY DAWN LEE, | ) | |
| | ) | |
| Plaintiffs. | ) | Case No.: 15-CV-525-TCK-FHM |
| v. | ) | |
| | ) | |
| 1) BP p.l.c., et al.; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT KINDER MORGAN, INC.'S RESPONSE TO PLAINTIFFS' MOTION**
**FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................... 1

II.    Relevant Background and Procedural History .................................................... 1

III.    LEGAL AUTHORITY ....................................................................................... 5

IV.    ARGUMENT ...................................................................................................... 6

    A.    Undue Delay ............................................................................................. 7

        1.    The Proposed New Parties ............................................................ 9

            a.    The BP - and Marathon-related Entities ......................... 9

            b.    The Kinder Morgan-related Entities ............................. 10

        2.    The Proposed "New" Causes of Action – Fraud, Negligence Per Se, and Constructive Trust ....................................................... 13

        3.    Plaintiffs' Much-Expanded Geographic Scope ......................... 15

    B.    Undue Prejudice to the Opposing Party ................................................. 15

    C.    Bad Faith or Dilatory Motive ................................................................ 17

    D.    Futility of Amendment ........................................................................... 19

V.    CONCLUSION ................................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*,
No. 08-CV-414-GKF-FHM, 2011 WL 3421518 (N.D. Okla. Aug. 4, 2011)..........................17

*Bales v. Green*,
No. 16-CV-106-GKF-JFJ, 2017 WL 7038423 (N.D. Okla. Dec. 8, 2017)..............................17

*Beasley v. AZZ, Inc.*,
No. 15-CV-250-TCK-FHM, 2015 WL 5827795 (N.D. Okla. Oct. 6, 2015)
(Kern, J.) ........................................................................................................................8, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................19

*Bylin v. Billings*,
568 F.3d 1224 (10th Cir. 2009) ..................................................................................................5

*Edwards v. Farmers Ins. Co.*,
No. 08-CV-730-TCK-PJC, 2009 WL 4506218 (N.D. Okla. Nov. 24, 2009)
(Kern, J.) ................................................................................................................................7, 19

*Ellsworth v. City of Broken Arrow, Oklahoma*,
No. 19-CV-34-TCK-FHM, 2019 WL 2567660 (N.D. Okla. June 21, 2019)
(Kern, J.) .....................................................................................................................................16

*Foman v. Davis*,
371 U.S. 178 (1962)......................................................................................................................5

*Foy v. State Farm Mut. Auto. Ins. Co.*,
No. 117CV00992PJKSCY, 2018 WL 2107791 (D.N.M. May 7, 2018), *appeal
dismissed* (July 3, 2018), *reconsideration denied*, No. 117CV00992PJKSCY,
2018 WL 4006875 (D.N.M. July 13, 2018)..............................................................................12

*Frank v. U.S. West, Inc.*,
3 F.3d 1357 (10th Cir. 1993) ..................................................................................................5, 7

*Graff v. Aberdeen Enterprises II, Inc.*,
No. 4:17-CV-606-CVE-JFJ, 2018 WL 4517468 (N.D. Okla. Sept. 20, 2018)
(Kern, J.) .........................................................................................................................16, 18, 19

*Hayes v. Whitman*,
264 F.3d 1017 (10th Cir. 2001) ..................................................................................................8

*Hensgens v. Deere & Co.*,
   833 F.2d 1179 (5th Cir. 1987) ............................................................6

*Hom v. Squire*,
   81 F.3d 969 (10th Cir. 1996) ............................................................16

*Kang v. Kang*,
   11 P.3d 218 (Okla. Civ. App. 2000) ..................................................20

*Lawrence v. McDonald's Corp.*,
   No. 11-CV-0075-CVE-TLW, 2011 WL 2935674 (N.D. Okla. July 19, 2011) ........................6

*Minter v. Prime Equip. Co.*,
   451 F.3d 1196 (10th Cir. 2006) ..................................................5, 8, 16

*N.C. Corff P'ship v. Oxy USA*,
   929 P.2d 288 (Ct. App. OK 1996) ......................................................20

*Nsien v. Country Mut. Ins. Co.*,
   No. 16-CV-530-JED-TLW, 2017 WL 368504 (N.D. Okla. Jan. 25, 2017) ....................12

*Patton v. Guyer*,
   443 F.2d 79 (10th Cir. 1971) ............................................................16

*Rhodes v. Amarillo Hosp. Dist.*,
   654 F.2d 1148 (5th Cir. 1981) ............................................................7

*Ridge at Red Hawk, LLC v. Schneider*,
   493 F.3d 1174 (10th Cir. 2007) ..........................................................19

*Schlanger Ins. Tr. v. John Hancock Life Ins.*,
   No. 10-CV-576-TCK-FHM, 2012 WL 676227 (N.D. Okla. Feb. 29, 2012)
   (Kern, J.) ............................................................5

*Schrock v. Wyeth, Inc.*,
   727 F.3d 1273 (10th Cir. 2013) ..........................................................20

*Schur v. L.A. Weight Loss Centers, Inc.*,
   577 F.3d 752 (7th Cir. 2009) ............................................................6

*Spirit Bank Corp. v. Warner Aviation, Ltd.*,
   No. 11-CV-81-TCK-FHM, 2011 WL 6415472 (N.D. Okla. Dec. 21, 2011)
   (Kern, J.) ............................................................8

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
   2009 WL 2923010, No. 08-CV-259-TCK-FHM (N.D. Okla. Sept. 9, 2009) ..................21

*Tosco Corp. v. Koch Indus., Inc.*,
   216 F.3d 886 (10th Cir. 2000) ..................................................................................20

*Viernow v. Euripides Dev. Corp.*,
   157 F.3d 785 (10th Cir. 1998) ...............................................................................8, 18

*Watson ex. Rel. Watson v. Beckel*,
   242 F.3d 1237 (10th Cir. 2001) ................................................................................19

*Weathers v. Fulgenzi*,
   884 P.2d 538 (Okla. 1994)........................................................................................20

*Wells v. HBO & Co.*,
   813 F. Supp. 1561 (N.D. Ga. 1992) ..........................................................................21

## STATUTES, RULES & REGULATIONS

F.R.C.P. 12(b)(6) ..............................................................................................................19

F.R.C.P. 15(a) .............................................................................................................5, 19

F.R.C.P. 15(a)(2) ................................................................................................................5

F.R.C.P. 15(c) ..................................................................................................................20

F.R.C.P.15(c)(1)(C)(i)......................................................................................................21

F.R.C.P. 15(c)(1)(C)(ii) ...................................................................................................20

F.R.C.P. 30(b)(6) ..............................................................................................................12

Local Rule 7.2(d) ........................................................................................................ *passim*

## OTHER AUTHORITIES

61A AM. JUR. 2D PLEADING § 730 .....................................................................................18

12 OKLA. ST. ANN. § 95(A)(3)...........................................................................................19

Wright, Miller & Kane, 6A FEDERAL PRACTICE AND PROCEDURE § 1498.3 ................................21

Defendant Kinder Morgan, Inc. ("Kinder Morgan") hereby responds in opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint ("Motion to Amend").

## I.     INTRODUCTION

Five years into this litigation, after extensive fact and expert discovery, and on the eve of Defendants' filing of dispositive and *Daubert* motions, Plaintiffs seek leave to file a Second Amended Complaint and ask the Court to authorize what is tantamount to a "do-over."  If Plaintiffs have their way, they would add a new, non-diverse defendant that is unaffiliated with any current defendant and that would seemingly divest this Court of jurisdiction.  Their proposed amendment would also join ten other new parties, add another nearby refinery to the case, assert new fraud, fraud-related and constructive trust claims and make multiple other changes too numerous to mention.[1]

Plaintiffs cannot point to any newly-discovered information that justifies this last-minute effort to stave off resolution of their hotly-contested claims.  And, given the time and energy that Defendants have expended in responding to Plaintiffs' claims, the prejudice to Defendants is patent.  Plaintiffs' application wholly fails to satisfy the standards governing amended pleadings and should thus be denied by the Court.

## II.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs commenced this case on June 24, 2015 as a state court action, filing their initial pleading in the District Court for Creek County, Oklahoma.  After Kinder Morgan removed the case to this Court on diversity grounds in September 2015, Plaintiffs filed a Motion to Remand.  Kinder Morgan opposed that motion on the ground that Plaintiffs had fraudulently joined non-

---

[1] These changes are so numerous that Plaintiffs' Motion to Amend fails to mention them. Instead, they appear only in the proposed Second Amended Complaint included with Plaintiffs' Motion.

diverse defendants.  This Court agreed with Kinder Morgan and denied Plaintiffs' Motion to Remand in September 2016.

With the case firmly situated in federal court, Defendant BP filed a Motion to Dismiss that led to the dismissal of several of Plaintiffs' claims without prejudice.  Plaintiffs then filed their first Amended Complaint in October 2016 seeking to correct the legal deficiencies in their initial pleading.  In response, Defendants filed new Motions to Dismiss and Motions to Strike. Those Motions ultimately resulted in this Court's dismissal of several of Plaintiffs' causes of action, including negligence per se and fraud, in July 2017.

The parties then embarked upon a lengthy and exhaustive discovery process to address the claims asserted in Plaintiffs' Amended Complaint.  Throughout 2017 and 2018, the parties exchanged voluminous document productions encompassing hundreds of thousands of pages, including significant quantities of documents obtained by both Plaintiffs and Defendants from public agencies, including the U.S. Environmental Protection Agency ("EPA") and the Oklahoma Department of Environmental Quality ("ODEQ").  Beginning in March 2018, Defendants noticed and took a series of fact depositions, including an ODEQ employee and the individual Plaintiffs themselves.  Eventually, in April 2019, Plaintiffs began noticing and taking depositions as well, starting with corporate designee depositions.  All in all, twenty-five fact depositions have been taken in this case.

In the midst of fact discovery, there were two court proceedings bearing on Plaintiffs' current request to amend their Amended Complaint.  First, in September 2017, Plaintiffs sought to extend all deadlines in the Court's original Scheduling Order, including re-setting the deadline for "Motions to Join and Amend" to January 2018, which had expired in February 2017.  [Doc. 157]  In their motion, Plaintiffs relied on ongoing discussions with Defendants BP and Marathon

regarding the potential substitution of entities.  In its response, BP noted that it had made clear to Plaintiffs that it was not a proper party since June 2016.  [Doc. 160]  Similarly, Marathon noted it had provided similar information to Plaintiffs back in March 2017.  [Doc. 161]  Ultimately, this Court denied Plaintiffs' request to set a new period in which Plaintiffs could amend as of right and instead instructed Plaintiffs to make a motion for leave.  [Doc. 166]  But Plaintiffs failed to seek leave for the next two and a half years, even though they clearly believed as of September 2017 that they had sufficient information to file an amended complaint joining or substituting additional purported BP and Marathon affiliates.

Second, as Plaintiffs note in their motion, in October 2018, this Court granted in part Kinder Morgan's Motion to Disqualify Durbin Larimore & Bialick ("DLB"), one of the three firms representing Plaintiffs.  DLB was disqualified on conflict of interest grounds arising out of a DLB partner's former representation of Kinder Morgan affiliates when responding to ODEQ's inquiries regarding potential liability for the former Wilcox Refinery site.  This Court *did not* disqualify Plaintiffs' two other law firms, Michael J. Blaschke, PC and the DeVore Law Firm, PLC, both of which have represented Plaintiffs from Day One of this litigation and continue to do so.  Indeed, those firms continued fact discovery – including defending depositions and producing documents – in the time between DLB's disqualification in October 2018 and Plaintiffs' retention of their fourth law firm, Harris, Finley & Bogle, P.C., in April 2019.

Expert discovery commenced in earnest in July 2019 with Plaintiffs' expert disclosures, which were supplemented in September 2019.  Plaintiffs provided five expert reports on a host of subjects on September 6, 2019; Defendants deposed four of Plaintiffs' five experts prior to serving reports from their own experts (two jointly retained and one retained by BP alone) on

December 23, 2019.  On March 12, 2020, the deposition of Plaintiffs' last expert was completed; the parties are working to schedule the depositions of the joint defense experts.[2]

During the course of expert discovery, Defendants filed an application with the Court for a further extension of the compliance dates in the governing scheduling order so that Defendants would be able to take the depositions of Plaintiffs' experts, which had been delayed, prior to the submittal of their own expert reports.  [Doc. 231]  Although Plaintiffs would not consent to the application before it was filed, Plaintiffs' responsive papers acknowledged that a scheduling adjustment would be required, advising the Court that they imminently planned to file a motion for leave to file a Second Amended Complaint and committing to doing so by November 1, 2019.  [Doc. 241, at ¶ 1]

However, that date came and went without any such filing by Plaintiffs – until the present application was filed more than four months later, a week after the last deposition of Plaintiffs' experts and exactly three weeks before the filing of dispositive motions under the existing Amended Scheduling Order.  At this late date, Plaintiffs' proposed Second Amended Complaint aims to totally re-shape the case by:

- Adding 11 new defendants, including one that has no current corporate relation to any existing defendant (Midwestern Gas Transmission Co. ("Midwestern")), and which is apparently non-diverse and threatens to divest this Court of jurisdiction;

---

[2] As noted in Defendants' Motion to Quash and for Protective Order [Doc. 264] and Defendants' Unopposed Motion to Stay Pretrial Deadlines [Doc. 267], one of Defendants' experts, Dr. Glenn Millner, is currently in engaged in response activities related to the COVID-19 virus outbreak. Defendants' other expert, Robert Grace, has been unavailable due to a family health emergency. Defendants and Plaintiffs have agreed to use best efforts to schedule those depositions during the stay period granted by the Court's March 20, 2020 Minute Order [Doc. 268], subject to the safety of the participants.

- Significantly expanding the geographic scope of the case via the addition of the former Transcontinental/Ohio Refinery located to the north of the Wilcox site;

- Resurrecting and expanding on claims that were dismissed earlier in the case, including negligence per se and fraud (now alleged to include civil conspiracy, willful deceit, actual fraud, constructive fraud, and misrepresentation);

- Adding an additional basis of liability for all existing (and proposed new) defendants via an entirely new cause of action for a constructive trust; and

- Revamping their existing claims and allegations through dozens upon dozens of additions and alterations.

## III.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 15(a) governs amendments of pleadings before trial. That rule provides that once a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party."  F.R.C.P. 15(a)(2). According to the Rule, "leave shall be freely given when justice so requires."  *Id.*  In the Tenth Circuit, there are five general circumstances in which leave to amend should be denied: undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, and futility of amendment.  *See Schlanger Ins. Tr. v. John Hancock Life Ins.*, No. 10-CV-576-TCK-FHM, 2012 WL 676227, at *2 (N.D. Okla. Feb. 29, 2012) (Kern, J.);[3] *see also Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). All five of those circumstances are present here.

---

[3] A copy this decision is attached at Exhibit 1, pursuant to Local Rule 7.2(d).

Also relevant here is the heightened standard applied to requests for amendments that would destroy diversity jurisdiction via the addition of a non-diverse defendant.  In those circumstances, courts view such requests with "greater scrutiny," with consideration as to "whether the plaintiff was dilatory or moved to amend in bad faith."  *Lawrence v. McDonald's Corp.*, No. 11-CV-0075-CVE-TLW, 2011 WL 2935674, at *2 (N.D. Okla. July 19, 2011) (citing *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)).[4]  Four factors are generally used to evaluate whether such an amendment should be permitted, although these factors are not exclusive:

> (1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction;
>
> (2) the timeliness of the request to amend;
>
> (3) whether the plaintiff will be significantly injured if joinder is not allowed; and
>
> (4) any other relevant equitable considerations.

*See id.* (quoting *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009)).

## IV.   ARGUMENT

Plaintiffs seek leave to amend their Amended Complaint five years into this litigation and three weeks before the dispositive motion deadline.  Their proposed amendments would re-shape almost every aspect of this case, from its geographic reach to the causes of action pled to the very jurisdiction of this Court to hear the lawsuit.  Plaintiffs have presented cursory statements about "unearthing" new information through discovery, but share no specifics regarding what that information is or when it was discovered.  The reason for that is simple – Plaintiffs have had all the information necessary to propose these amendments for years but chose not to do so.

---

[4] A copy this decision is attached at Exhibit 2, pursuant to Local Rule 7.2(d).

Indeed, Plaintiffs' Motion to Amend heavily suggests that the main reason for this amendment is the disqualification of DLB and the subsequent retention of Harris, Finley & Bogle, P.C. in April 2019.  This argument ignores that Plaintiffs' two other law firms have been engaged in this litigation without interruption from the very start.  Even putting aside that fact, the retention of a new attorney does not constitute a valid justification for the late filing of an amended complaint.[5]  *See Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *4 (N.D. Okla. Nov. 24, 2009) (Kern, J.) (quoting *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981)).[6]

Ultimately, Plaintiffs can muster no legitimate justification for this amendment.  To the contrary, their request is unduly delayed, prejudicial to the defendants (both existing and proposed), made in bad faith, and ultimately would be futile.  Furthermore, as to the proposed addition of Midwestern, Plaintiffs cannot meet the higher bar applicable to such a request, having added that unnecessary proposed defendant for the sole purpose of sending this case back to state court.

A.    Undue Delay

Under Tenth Circuit law, "[u]ntimeliness alone is an adequate reason to refuse leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993) (internal citations omitted) (denying motion to amend filed four and a half month after the scheduling order's amendment

---

[5] Indeed, this Court has recognized this concept even within this very case.  In granting Defendant Marathon's request for a protective order precluding discovery regarding the Transcontinental/Ohio refinery, this Court noted,"…[T]he court does, however, note that the case has proceeded for four years on the basis that The Marathon Defendants' liability was based on their role in the operation of the Wilcox Refinery and tank farm. **The entry of new counsel for Plaintiffs does not change that four year history**."  Doc. 245, n. 3 (emphasis added).

[6] A copy this decision is attached at Exhibit 3, pursuant to Local Rule 7.2(d).

deadline).  In determining whether a delay in amending is "undue," the Tenth Circuit has held that denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay, or where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.  *See Beasley v. AZZ, Inc.*, No. 15-CV-250-TCK-FHM, 2015 WL 5827795, at *2 (N.D. Okla. Oct. 6, 2015) (Kern, J.) (internal citations omitted) (denying motion to amend complaint to add new defendant entity where defendants had previously disclosed the existence of the entity);[7] *Spirit Bank Corp. v. Warner Aviation, Ltd.*, No. 11-CV-81-TCK-FHM, 2011 WL 6415472, at *5 (N.D. Okla. Dec. 21, 2011) (Kern, J.) (internal citations omitted) (denying motion to amend as untimely).[8]

Plaintiffs' request to amend comes five years after they commenced this case, three and a half years since they filed their first Amended Complaint, after the completion of all fact discovery and nearly all expert discovery, and just three weeks prior to the dispositive motion deadline.  This timing alone supports denial of their request.  *See, e.g., Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001) (denying motion for leave to amend filed two years after the initial complaint and while summary judgment motions were pending); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir. 1998) (denying motion for leave to amend filed nineteen months after the initial complaint); *see also Minter*, 451 F.3d at 1205  ("The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.").

---

[7] A copy this decision is attached at Exhibit 4, pursuant to Local Rule 7.2(d).

[8] A copy this decision is attached at Exhibit 5, pursuant to Local Rule 7.2(d).

Nor can Plaintiffs provide any adequate explanation for waiting so long – retention of additional counsel surely cannot suffice.  Indeed, as demonstrated below, Plaintiffs were aware of all facts upon which the amendment is based for at least a year – and in virtually all cases, years – prior to the filing of their instant Motion.  As such, the delay is most certainly undue. *See Beasley*, 2015 WL 5827795, at *2 (internal citations omitted).

        1.     The Proposed New Parties

            a.     The BP - and Marathon-related Entities

BP and Marathon will address these proposed six new parties (Marathon Petroleum Company, LP, Marathon Oil Company, Atlantic Richfield Company, BP Corporation North America Inc., BP Pipelines (North America) Inc., and BP America Inc.) in more detail in their separate response briefs.  However, as a general matter, multiple lines of evidence show that Plaintiffs were aware of all of these entities well prior to the filing of their Motion to Amend. For example, their September 2017 motion practice seeking an extension of the deadline to join parties or amend makes this clear, referencing their ongoing discussions with BP and Marathon regarding substitution of parties, with the conclusion that Plaintiffs would be prepared to amend to add those parties by January 2018.  These negotiations are in fact documented in Plaintiffs' current Motion, which quotes Marathon's counsel's November 19, 2019 correspondence referencing Marathon's flagging of this issue "since the outset of the case."  [Doc. 263] Plaintiffs, of course, ultimately did not seek leave to make those amendments until now, despite this Court's October 2017 opinion suggesting that they do so.  [Doc. 166]

Plaintiffs also rely on a March 2015 report prepared for EPA by Toeroek Associates, Inc. as identifying additional BP entities as potentially responsible parties.  That document was

produced in discovery *by Plaintiffs themselves* on June 29, 2017.[9]  Plaintiffs also cite BP's

discovery responses as a further source of information for their proposed amendment.  Yet, BP

provided those responses on December 16, 2016.  How Plaintiffs can now argue that they only

just became aware of this information, which has been in their possession since June 2017 *at the*

*latest*, is difficult to fathom.  Given that Plaintiffs had actual knowledge of the existence of these

entities (not to mention the details of their potential connection to this case) years ago, their

Motion to Amend should be denied.  *See Beasley*, 2015 WL 5827795, at *2.

           b.      The Kinder Morgan-related Entities

Plaintiffs also seek to add five Kinder Morgan-related entities (EPEC Oil Company

Liquidating Trust, El Paso Tennessee Pipeline Co., L.L.C., El Paso Energy, E.S.T. Co., EPEC

Oil Company, and Midwestern) to the single Kinder Morgan entity (Kinder Morgan, Inc.) that

has been a defendant in this case for the last five years.  As with the alleged BP and Marathon-

related entities, Plaintiffs had actual knowledge of all of the purported information upon which

they base their new claims against these entities for years:

- Plaintiffs' original pleading from June 2015 references "a straw Trust created on

behalf of a straw El Paso entity[.]" [Doc. 2-2, at ¶ 26]  Nearly five years later, Plaintiffs now seek

to add the "straw Trust," its Trustee and the "straw El Paso entity" as defendants.

- Plaintiffs' Amended Complaint, filed in October 2016, specifically references a

February 3, 2012 letter sent by the Trustee to ODEQ that details the corporate history of the

Wilcox Oil Company and expressly names the EPEC Oil Company and the EPEC Oil Company

Liquidating Trust. [Doc. 72, ¶ 24]   A true and correct copy of that letter is attached at Exhibit 6.

---

[9] Obviously, this document must have been in Plaintiffs' possession for some period prior to its
production in discovery.

Even as Plaintiffs were permitted to amend their complaint to reference that letter, they still did not name either the EPEC Oil Company, the Trust or the Trustee at that time.

- On March 14, 2017, Kinder Morgan produced to Plaintiffs its January 3, 2013 response to an EPA information request regarding the Wilcox site that included the names and roles of all five newly-proposed defendants.[10]  In the response, Kinder Morgan discussed the EPEC Oil Company, the EPEC Oil Company Liquidating Trust, and El Paso Energy E.S.T. Company (as the Trustee).  Included with that response was a copy of the EPEC Oil Company Liquidating Trust Agreement, which identified El Paso Energy E.S.T. Company as the Trustee, El Paso Tennessee Pipeline Co. as the primary beneficiary of the Trust and Midwestern as the sole stockholder of EPEC Oil Company.  A true and correct copy of the Trust Agreement is attached at Exhibit 7.

- Plaintiffs' June 2017 production included a May 2014 EPA/Toeroek Associates document entitled "Draft Title Search and Corporate History Report," which detailed the alleged relationships among EPEC Oil Company, the EPEC Oil Company Liquidating Trust, and El Paso Energy E.S.T. Company, El Paso Tennessee Pipeline Co., and Midwestern.

- Multiple other documents contained in productions Kinder Morgan made to Plaintiffs in 2017 and 2018 referenced all of these Kinder Morgan-related entities, including but not limited to (i) Kinder Morgan's response to EPA's third information request, (ii) the Undertaking and Agreement by and among EPEC Oil Company, Midwestern, El Paso Tennessee Pipeline Co., and the EPEC Oil Liquidating Trust, and (iii) the Amended and Restated Plan of

---

[10] It is worth noting that once submitted to EPA, this response became a publicly available record under the federal Freedom of Information Act ("FOIA").  Plaintiffs' counsel submitted several FOIA requests to EPA, beginning in 2015.  It is therefore highly likely that Plaintiffs had this document, the February 3, 2012 ODEQ letter, among many other documents, prior to Kinder Morgan's March 2017 production.

Distribution of EPEC Oil Company, all of which were produced to Plaintiffs on January 22, 2018.

- These particular entities – and the relationship among them as related to Wilcox Oil Company – were a significant topic of testimony at Plaintiffs' deposition of Eric McCord, Esq., a Kinder Morgan corporate representative designated under F.R.C.P. 30(b)(6).  That deposition occurred on April 9, 2019, a full year ago.

In sum, Plaintiffs cannot and do not set forth any adequate reason for their delay in requesting the addition of any of the proposed parties, as they were aware of each of these parties years ago.  Furthermore, with respect to Midwestern, a proposed new party that would apparently destroy diversity, Plaintiffs are subject to a heightened standard that they cannot meet, especially where there is "no indication that [there] was a recent discovery" of that party.  *See Foy v. State Farm Mut. Auto. Ins. Co.*, No. 117CV00992PJKSCY, 2018 WL 2107791, at *2 (D.N.M. May 7, 2018), *appeal dismissed* (July 3, 2018), *reconsideration denied*, No. 117CV00992PJKSCY, 2018 WL 4006875 (D.N.M. July 13, 2018) (finding that the fact that plaintiff previously knew of the proposed new defendant "strongly suggests that she added him for the sole purpose of destroying diversity");[11] *see also Nsien v. Country Mut. Ins. Co.*, No. 16-CV-530-JED-TLW, 2017 WL 368504, at *3 (N.D. Okla. Jan. 25, 2017) (denial of amendment is appropriate when "plaintiffs' post-removal efforts to add a non-diverse defendant they previously had knowledge of is simply an effort to return the case to state court").[12]

2.   The Proposed "New" Causes of Action – Fraud, Negligence Per Se, and Constructive Trust

---

[11] A copy this decision is attached at Exhibit 8, pursuant to Local Rule 7.2(d).

[12] A copy this decision is attached at Exhibit 9, pursuant to Local Rule 7.2(d).

All of Plaintiffs' proposed new causes of action – two fraud claims, negligence per se, and constructive trust – are based on purported information previously available to them; leave to add them should be denied.

Fraud.  Plaintiffs' proposed fraud claims – which are variously characterized as civil conspiracy, willful deceit, actual fraud, constructive fraud, and misrepresentation – appear based on two alleged acts.  First, Plaintiffs focus on the formation of the EPEC Oil Company Liquidating Trust and various implementing transactions that occurred among the Kinder Morgan-related entities Plaintiffs wish to join to this action.  This "new" fraud claim relies upon essentially the same transactions that were described in the October 2016 Amended Complaint. The fraud claim in that pleading was dismissed by this Court in July 2017 for lack of particularity.  Plaintiffs, however, never pursued a pleading amendment until now, even though they have been aware of all of these entities and their respective roles for years.  Nor have they identified any new information that would warrant resurrecting their fraud claim at this late stage of the litigation.

The second basis for Plaintiffs' proposed fraud claims concerns alleged bulldozing of certain areas of the Wilcox site by Tenneco.[13]  This allegation is based on a March 18, 1998 memorandum composed by an ODEQ contractor, relaying information reportedly gained from a property owner.  The memorandum is contained as an appendix to a March 1999 Site Assessment Report prepared for EPA.  Kinder Morgan produced this report, including the memorandum appendix, to Plaintiffs on March 14, 2017, three years prior to Plaintiffs' Motion to

---

[13] Separate from its objection on timeliness grounds, Kinder Morgan also disputes the validity of this allegation, given conflicting evidence on this issue, including handwritten log books from this same contractor that indicate the company performing the bulldozing activities was Texaco, not Tenneco.

Amend.  Yet, once again, Plaintiffs never acted on this information and have presented no adequate reason for their delay in bringing forward this assertion of fraud.

Negligence Per Se.  Plaintiffs also attempt to resuscitate their negligence per se claim, alleging that Defendants left pollutants on Plaintiffs' properties, which contaminated groundwater and surface waters, including Sand Creek. [14]  These allegations are remarkably similar in substance to those contained in Plaintiffs' Amended Complaint and dismissed by the Court's July 2017 order.  [Doc. 81, ¶ 18].  They are not based on new facts recently discovered by Plaintiffs.  As noted, to the extent this claim is based on the alleged Tenneco bulldozing activities, Plaintiffs have been in possession of the available information related to those alleged activities since at least March 2017.

Constructive Trust.  Plaintiffs seek to add a constructive trust cause of action against all Defendants based on (1) Defendants' alleged avoidance of the cost of properly remediating the property they allegedly contaminated and (2) the transactions by which the EPEC Oil Liquidating Trust was funded.  *See* Doc. 263-1, at ¶¶ 72-73.  Yet, Plaintiffs were aware of the former since the filing of their initial pleading (and indeed asserted restitution and injunctive relief claims based on virtually the same underlying factual theory).  And, as described above, Plaintiffs have been in possession of all documents detailing the creation and funding of the Trust since January 2018 at the latest.  In short, there is no justification for adding this cause of action at this late stage.

3.       Plaintiffs' Much-Expanded Geographic Scope

---

[14] Notably, Plaintiffs' Motion makes no mention of this aspect of their amendment request. Rather, it appears only in the proposed Second Amended Complaint.  *See* Doc. 263-1, at ¶¶ 42-44.

Plaintiffs seek to add the Transcontinental/Ohio site to the scope of this litigation.  The Transcontinental/Ohio site is approximately 100 acres and is currently being addressed by Marathon Petroleum Company LP, one of the entities Plaintiffs seek to add, under a voluntary agreement with ODEQ.  The Marathon Defendants will address this requested amendment in more detail in their response brief; however, all Defendants oppose the addition of this site to this case.  As with each other proposed amendment, Plaintiffs have had actual knowledge of this site for years.  Indeed, the Marathon Defendants successfully resisted Plaintiffs' efforts to focus discovery on the Transcontinental/Ohio site.  [Doc. 245]  Plaintiffs' inordinate delay should preclude them from amending their claims to almost double the acreage at issue in this litigation.

In sum, Plaintiffs have known of each and every fact necessary for the amendments they seek for years.[15]  Even though an application would have been unduly delayed if filed on November 1, 2019, Plaintiffs represented to both the Court and Defendants that they planned to seek leave to amend by that date, more than four months ago.  [Doc. 241, at ¶ 1]  They have offered no adequate explanation for missing that self-imposed deadline or, more vitally, for their overall delay of years.  Because undue delay alone is a sufficient reason to deny leave to amend, the Court should reject Plaintiffs' Motion to Amend.

B.      Undue Prejudice to the Opposing Party

The Tenth Circuit has explained that the most important factor in determining whether to grant leave to amend a complaint is whether the amended complaint would result in undue prejudice to the opposing party, noting that courts generally find such prejudice where the proposed amendment would unfairly affect the defendant in terms of preparing its defense.

---

[15] Indeed, Plaintiffs nearly admit this in their Motion to Amend, noting that they purposefully waited to seek amendment for the alleged purpose of presenting one omnibus request to the Court.  *See* Doc. 263, at p. 3.

*Minter*, 451 F.3d at 1207-08 (citing *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)); see also

*Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). Courts in the Northern District of Oklahoma

have looked closely at the procedural posture of the case, particularly whether discovery has

already concluded and the proximity of the dispositive motion deadline. *See Ellsworth v. City of*

*Broken Arrow, Oklahoma*, No. 19-CV-34-TCK-FHM, 2019 WL 2567660, at *2 (N.D. Okla.

June 21, 2019) (Kern, J.) (permitting amendment "well before the close of discovery" and any

rulings on dispositive motions);[16] *Graff v. Aberdeen Enterprises II, Inc.*, No. 4:17-CV-606-CVE-

JFJ, 2018 WL 4517468, at *4 (N.D. Okla. Sept. 20, 2018) (Kern, J.) (permitting amendment

immediately following a successful motion to dismiss where discovery had not yet begun).[17]

Here, Defendants have been defending this case – that is, the case set forth in the

Amended Complaint– for *years*. Exhaustive fact discovery has already been completed,

including hundreds of thousands of pages of document production and twenty-five fact

depositions. All expert reports have been exchanged, including those addressing environmental

contamination pathways, and all of Plaintiffs' experts have been deposed.

Functionally speaking, what Plaintiffs now seek is a restart of the case. A renewed

motion to remand and a third round of motions to dismiss can be anticipated. Supplemental fact

discovery will be required, with Defendants needing to develop defenses regarding causes of

action that were dismissed previously (most notably, the fraud claims and claims related to the

Transcontinental/Ohio site). Likewise, new expert opinions will need to be developed.

Imposing this burden on Defendants – who have already spent five years preparing this case for

resolution -- is untenable and unfair and warrants denial of Plaintiffs' request. *See Bales v.*

---

[16] A copy this decision is attached at Exhibit 10, pursuant to Local Rule 7.2(d).

[17] A copy this decision is attached at Exhibit 11, pursuant to Local Rule 7.2(d).

*Green*, No. 16-CV-106-GKF-JFJ, 2017 WL 7038423, at *4 (N.D. Okla. Dec. 8, 2017) (denying request to amend to add a new claim against existing defendants where the case had already been pending for two years and the new claim would require additional discovery and briefing);[18] *see also Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*, No. 08-CV-414-GKF-FHM, 2011 WL 3421518, at *1 (N.D. Okla. Aug. 4, 2011) (denying amendment where new counsel entered the three year old case and sought to amend, but amendment would require additional discovery and briefing).[19]

Especially problematic is the proposed addition of Midwestern as a party. Midwestern is not affiliated with any existing Defendant and will need to retain separate counsel brand new to this five-year-old case. That counsel will need to familiarize itself with the current record – hundreds of thousands of pages of documents, twenty-five fact depositions and extensive expert discovery. At the conclusion of those extended efforts, Midwestern could well seek to assert cross-claims or third party claims, resulting in additional discovery. Midwestern will be also be entitled to conduct all new discovery, including depositions. And, of course, addition of a non-diverse party would destroy this Court's jurisdiction, sending this case back to state court. For all these reasons, the amendment to add Midwestern is subject to additional scrutiny and must be rejected.

C.     Bad Faith or Dilatory Motive

"Bad faith may be inferred if the proposed amendment contradicts the original pleading, such that the two cannot be reconciled, or if the party seeks leave to amend for an improper

---

[18] A copy this decision is attached at Exhibit 12, pursuant to Local Rule 7.2(d).

[19] A copy this decision is attached at Exhibit 13, pursuant to Local Rule 7.2(d).

purpose." *Graff*, 2018 WL 4517468, at *4.[20]   "[A] motion to amend may be denied where the amendment is interposed for the purpose of delay, such as where a party intentionally refrained from asserting the amendment until it became evident to it that the opposing party's motion for summary judgment was likely to be sustained."  61A AM. JUR. 2D PLEADING § 730.

The circumstances and timing surrounding Plaintiffs' Motion to Amend should give rise to an inference of bad faith and dilatory motive.  Plaintiffs' filing occurred three weeks before the dispositive motion deadline.  Plaintiffs are well aware that Defendants plan to file substantial motions for summary judgment attacking virtually every aspect of their case, as described in Defendants' briefing on the pending Motion to Extend Page Limits.  [Doc. 260, 262]  *Daubert* motions by Defendants are also in the offing.  In an effort to avoid an adjudication of the case they have prosecuted for five years, Plaintiffs filed this Motion to Amend.[21]  *Cf. Viernow*, 157 F.3d at 800 (noting that the Tenth Circuit "do[es] not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery").

The proposed amendment to add Midwestern also smacks of bad faith.  Plaintiffs' proposed allegations against Midwestern merely assert that Midwestern passed a receivable distributed by its subsidiary (EPEC Oil Company) through to its parent (El Paso Tennessee Pipeline Co.).  Plaintiffs could have prosecuted its (meritless) claims without Midwestern as a defendant and would suffer no injury.  The only purpose then in proposing Midwestern as a defendant is to destroy diversity and send this case back to state court, where Plaintiffs preferred

---

[20] A copy this decision is attached at Exhibit 11, pursuant to Local Rule 7.2(d).

[21] Plaintiffs have recently attempted to avoid this reckoning with respect to mediation as well.  A scheduled mediation session for February was cancelled by the mediator when Plaintiffs refused to share in the cost of the mediation in the manner deemed appropriate by the mediator.  *See* E-mail Chains, attached as Exhibits 14 and 15.

it be all along.  This motive is improper and not in keeping with the good faith requirement that underlies F.R.C.P. 15(a).

D.      Futility of Amendment

In addition to all of the foregoing reasons why Plaintiffs' Motion to Amend should be denied, their proposed amendments to add new parties are also futile, as they would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  "A proposed amendment is futile if the pleading, as amended, would be subject to dismissal for any reason."  *Graff*, 2018 WL 4517468, at *5 (N.D. Okla. Sept. 20, 2018) (citing *Watson ex. Rel. Watson v. Beckel*, 242 F.3d 1237, 1239 –40 (10th Cir. 2001)).  Essentially, this requires examining whether the proposed amendment can withstand a 12(b)(6) motion to dismiss.  "In considering whether a proposed amendment can withstand a Rule 12(b)(6) motion, a court must determine whether the plaintiff has stated a claim upon which relief may be granted."  *Edwards v. Farmers Ins. Co.*, No. 08-CV-730-TCK-PJC, 2009 WL 4506218, at *4 (N.D. Okla. Nov. 24, 2009) (Kern, J.).  Of course, the familiar inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The main obstacle that renders Plaintiffs' attempt to add new parties futile is the two-year statute of limitations applicable to all of their claims (both claims against the newly proposed defendants and new claims against existing Defendants).  Oklahoma imposes a two-year statute of limitations for an action for trespass upon real property, for injuring personal property, for injury to the rights of another not arising on contract and for fraud.  12 OKLA. ST. ANN. §95(A)(3).  The courts have also consistently applied a two-year statute to nuisance claims.  *See*

*Tosco Corp. v. Koch Indus., Inc.*, 216 F.3d 886, 895 (10th Cir. 2000); *N.C. Corff P'ship v. Oxy USA*, 929 P.2d 288, 293 (Ct. App. OK 1996).[22]

Oklahoma has adopted the discovery rule when determining when a cause of action accrues.  Oklahoma's discovery rule applies the standard notion that the statute of limitations does not run "until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action."  *Weathers v. Fulgenzi*, 884 P.2d 538, 541 (Okla. 1994).  Oklahoma law also makes clear that "a plaintiff need not know the 'extent of injury' or know that it is 'permanent' for the limitations period to commence."  *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kang v. Kang*, 11 P.3d 218, 219 (Okla. Civ. App. 2000)).

Even under the discovery rule, Plaintiffs unquestionably knew of their alleged injuries when they filed their initial pleading in June 2015, nearly five years ago.  As such, their claims against the proposed additional defendants are out of time.

Nor can the relation-back doctrine salvage Plaintiffs' untimely claims.  Under Federal Rule of Civil Procedure 15(c), an amendment that changes a party or the naming of a party will relate back to the date of the original pleading only in limited circumstances.  Among other things, within ninety days of filing of the complaint, the party to be brought in by the amendment must know or should have known that the action would have been brought against it "but for a mistake concerning the proper party's identity."  F.R.C.P. 15(c)(1)(C)(ii).

Here, Plaintiffs' failure to name any of the eleven parties they wish to add cannot be characterized as "a mistake concerning the proper party's identity."  As described in Section

---

[22] Defendants acknowledge that the statute of limitations would not bar the claims of the minor Plaintiffs.  However, any damages suffered by those Plaintiffs are necessarily extremely limited, as they have no standing to bring any sort of property damage claim.

IV(A)(1), Plaintiffs have been well aware of all of these entities as well as their purported role in the case since January 2018, at the very latest.  Nevertheless, they purposefully chose not to amend until now, more than two years after even that most generous of dates.  It is well-established that this type of deliberate litigation decision does not qualify as a mistake under the Rule.  6A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE §1498.3; *see also Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992) ("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset."); *see also Tomlinson v. Combined Underwriters Life Ins. Co.*, 2009 WL 2923010, No. 08-CV-259-TCK-FHM (N.D. Okla. Sept. 9, 2009) (where plaintiffs sought to add "corporate sham" claims against a parent company of one of the named defendants, finding that lack of knowledge of the intended defendant's identity is not a mistake concerning the identity of the proper party and was thus not within the scope of the rule).[23]

Specifically as to the Kinder Morgan-related entities, there can be no credible assertion by Plaintiffs that they mistakenly pled claims against Kinder Morgan that they intended to plead against the parties that they now seek to add to this litigation.  Plaintiffs evidently made the tactical decision to seek relief from the publicly-traded corporate parent, characterizing its claims as successor claims, and purposefully eschewed naming as a party any of these additional entities.  This was not a case of mistaken identity.

Moreover, Plaintiffs cannot satisfy a yet further requirement concerning Midwestern.  Under the Rules, a claim against a new party relates back only if, within ninety days of filing of the complaint, the party received such notice of the action that it will not be prejudiced in defending on the merits.  *See* F.R.C.P.15(c)(1)(C)(i).  Yet, Midwestern presumably has no

---

[23] A copy this decision is attached at Exhibit 16 pursuant to Local Rule 7.2(d).

knowledge of this case, as it is not affiliated with any existing party and, thus, any claims against Midwestern are brought far outside the statute of limitations.

Finally, even if timely, Plaintiffs' proposed fraudulent transfer claims against the Kinder Morgan parties are futile because they are contradicted by the very documents they cite for support.

Plaintiffs' allegations regarding a fraudulent transfer of $93 million ignore a critical aspect of the underlying transactions that is plain on the face of the documents relied upon by Plaintiffs – that is, that the $93 million remained available to satisfy the claims of creditors. Plaintiffs assert that EPEC Oil Company transferred a $93 million account receivable to Midwestern and then to El Paso Tennessee Pipeline Co. (the then-parent of Midwestern) – thereby allegedly depriving the Trust of sufficient funds to resolve EPEC Oil's liabilities. [Doc. 263-1, ¶ 64]   What Plaintiffs choose to ignore are the provisions in the March 9, 2001 Undertaking and Agreement that they specifically reference making clear that in exchange for the $93 million distribution, El Paso Tennessee Pipeline Co. agreed to fund all Trust obligations (including future liabilities and claims) up to $93 million.  *See* Undertaking and Agreement, attached hereto as Exhibit 17.  Only through a bad faith pleading can Plaintiffs assert a fraudulent transfer claim when the money they claim to have been fraudulently transferred to avoid creditors is still available to valid creditors.

## V.   CONCLUSION

Plaintiffs seek leave to amend their Amended Complaint and reshape virtually every aspect of this lawsuit that they have prosecuted for five years and to do so on the eve of dispositive motions.  They have pointed to no newly discovered facts or information that would warrant such extraordinary, last-minute relief.  Instead, Plaintiffs' Motion to Amend presents a clear example of undue delay, undue prejudice to Defendants, dilatory motive and futility.

For the foregoing reasons, Defendant Kinder Morgan, Inc. respectfully requests that this Court deny Plaintiffs' Motion for Leave to File Second Amended Complaint.

Dated:  April 6, 2020

Respectfully submitted,

/s/ *Amy Sherry Fischer*
Amy Sherry Fischer, OBA No. 16651
FOLIART HUFF OTTAWAY & BOTTOM
201 Robert S. Kerr Avenue, 12th Floor
Oklahoma City, OK 73102
Telephone: (405) 232-4633
amyfischer@oklahomacounsel.com
and
Ross A. Lewin (Pro Hac Vice)
Ross.Lewin@faegredrinker.com
Bonnie A. Barnett (Pro Hac Vice)
Bonnie.Barnett@faegredrinker.com
P. Leigh Bausinger (Pro Hac Vice)
leigh.bausinger@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH, LLP
**ATTORNEYS FOR DEFENDANT KINDER MORGAN, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of April, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Allan DeVore
Jandra Cox
DeVore Law Firm, PLC
5709 N.W. 132nd Street
Oklahoma City, OK 73142
Telephone:  405-603-8585
dlf@devorelawok.com
jandra@devorelawok.com

Michael J. Blaschke
Michael J. Blaschke, P.C.
3037 N.W. 63rd Street, Suite 205
Oklahoma City, OK 73116
Telephone:  405-562-7771
mblaschke@thelawgroupokc.com

James E. Key
Michael K. Reer
Harris, Finley & bogle, P.C.
777 Main Sreet, Suite 1800
Fort Worth, TX 76102
Telephone:  817-870-8735
Facsimile:  817-833-1182
jkey@hfblaw.com
mreer@hfblaw.com

**ATTORNEYS FOR PLAINTIFFS**

Kenneth H. Blakley
Robert D. Edinger
Jacqueline G. Stone
Travis W. Brown
EDINGER LEONARD & BLAKLEY
PLLC
6301 N. Western Ave., Suite 250
Oklahoma City, OK 73118
Telephone:  405-445-7500
Facsimile:  405-971-4331
kblakley@elbattomeys.com
redinger@elbattorneys.com
jstone@elbattorneys.com
tbrown@elbattorneys.com

**ATTORNEYS FOR DEFENDANTS**
**MARATHON OIL CORPORATION**
**MARATHON PETROLEUM**
**CORPORATION**

A. Scott McDaniel
Stacy L. Acord
Melissa A. East
McDaniel Acord, PLLC
9343 E. 95th Ct.
Tulsa, Oklahoma  74133
Telephone:  918-382-9200
Facsimile:  918-382-9282
smcdaniel@ok-counsel.com
sacord@ok-counsel.com
 meast@ok-counsel.com

**ATTORNEYS FOR DEFENDANT**
**BP p.l.c.**

/s/ *Amy Sherry Fischer*
Amy Sherry Fischer